# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHAROAH CASTRO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DEPUTY DIRECTOR KASTORA, Et. Al. | : | |
| Director of Correction, RN MICHELLE | : | |
| CORA, RN JESSICA JONES, RN | : | |
| JENNIFER MROZ, RN JENNIFER | : | |
| KELLER, DR. THOMAS, Psychologist, | : | |
| OFFICER THELESMA, RN KRISTEN | : | |
| HUI, RN NICOLE REISS, JOHN DOE 1, | : | |
| 2, 3, KENNETH R. WOCZEWSKI, DR. | : | |
| DANIEL HECKMAN, RN. PATRICIA | : | |
| KIEBA, SUPERINTENDENT CYTHIAN | : | |
| LINK, MEDICAL PROVIDER, MR. | : | |
| KORSZNIAK, Health Care Administrator, | : | |
| SECRETARY JOHN WETZEL, | : | |
| SUPERINTENDENT MICHAEL | : | |
| OVERMYER and MEDICAL PROVIDER, | : | |
| All Sued in Defendants Individual | : | |
| And Official Capacities | : | NO. 18-1029 |

## MEMORANDUM OPINION

Savage, J.                                          September 20, 2018

Plaintiff Pharoah Castro, acting *pro se*, brings this section 1983 action arising out

of his medical care and treatment while in pretrial detention at Northampton County

Prison and while serving his sentence in state prison at State Correctional Institution-

Graterford and State Correctional Institution-Forest.  He avers that he broke his arm

when he fell out of his top bunk bed at the Northampton jail.  He claims that before the

fall, his requests to be assigned a bottom bunk bed were denied even though his

prescribed medication made him drowsy.  Castro also claims that after undergoing

surgery to repair his broken arm, the PrimeCare defendants[1] discontinued his prescribed narcotic medications and failed to provide appropriate physical therapy. He contends that the Department of Corrections (DOC) defendants,[2] as officials within the Pennsylvania prison system, were responsible for the operation of the prisons at which he was incarcerated.

In essence, Castro claims the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He also complains that the defendants violated his due process rights under the Fifth and Fourteenth Amendments by failing to comply with prison grievance procedures in handling his complaints about his treatment.[3] He seems to make a *Monell* claim for the prison officials' failure to follow unspecified safety regulations.

All defendants have moved to dismiss the complaint. In their motion to dismiss, the PrimeCare defendants contend that Castro has failed to state causes of action based upon deliberate indifference to a serious medical need. They argue that Castro has at most alleged a claim for medical malpractice, which is not actionable under the Eighth Amendment. They also argue that Castro's professional negligence claims must be dismissed because he failed to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.

James Kostura, the Deputy Warden at Northampton at the time Castro was detained there, and Corrections Officer Thelesma argue that they were not personally

---

[1] The PrimeCare defendants include Dr. Kenneth Wloczewski, Dr. Alex Thomas, Jennifer Mroz, Jessica Jones, Nicole Reiss, Jennifer Keller, Kristen Hui, and Michelle Cora.

[2] The DOC defendants include John Wetzel, Cynthia Link, Joseph Korszniak, and Michael Overmyer.

[3] In the introductory paragraph of the complaint, Castro states that he is bringing claims for deprivation of "rights guaranteed by the First, Fifth, Eighth and Fourteenth Amendments." Aside from the second paragraph regarding jurisdiction, that is his only reference to the First Amendment. Nowhere else, including in his list of claims at the end of the complaint, does he mention the First Amendment.

involved in any of the alleged wrongdoing. Kostura also argues that to hold him liable in his official capacity, Castro must establish a *Monell* claim against Northampton, which he failed to do. Finally, both Kostura and Thelesma argue that Castro fails to allege they were deliberately indifferent to his medical needs.

The DOC defendants invoke Eleventh Amendment immunity. They alternatively argue that they are not persons subject to suit for damages under section 1983. The DOC defendants also contend they were not personally involved in any wrongdoing, and they cannot be held liable on the basis of *respondeat superior*.

Dr. Daniel Heckman and Patricia Kieba, the medical providers who treated Castro at St. Luke's Hospital, contend that he fails to allege any facts implicating them in any wrongdoing. Alternatively, Heckman and Kieba argue that even if Castro states a claim for medical malpractice against them, it fails because he did not file a certificate of merit.

Accepting the facts in the complaint as true and viewing them in the light most favorable to Castro, we conclude that he fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need.[4] Nor has he stated a *Monell* claim. Therefore, we shall grant the motions to dismiss.

## Factual Background[5]

According to his complaint, Castro suffered from ADHD, ADD, OCD, anxiety, depression, and mood swings.[6] In October 2016, he was prescribed Seroquel to

---

[4] Castro generically names "medical providers" at SCI Graterford and SCI Forest as defendants without identifying any individuals. Because he fails to establish any basis for claims against medical providers at either institution, his claims against them are also dismissed.

[5] The facts recited are those alleged in Castro's complaint.

[6] Compl. (Doc. No. 4) ¶ 23.

manage his mood swings and Klonopin for his anxiety.[7]  On November 26, 2016, he asked the Northampton County Prison psychologist, Dr. Alex Thomas, to recommend bottom bunk status because the Seroquel made him drowsy.[8]  The request was denied.[9]  On February 17, 2017, Castro's Seroquel prescription was reduced from 400 mg to 200 mg.[10]  He again requested bottom bunk status.[11]  Again, his request was denied.[12]

On April 27, 2017, at 7:00 p.m., Castro took his prescribed Seroquel and went to sleep at 8:30 p.m.[13]  On April 28, 2017, at approximately 4:30 a.m., Castro fell out of his top bunk, fracturing his right arm.[14]  When he awoke the next morning, he "felt pain" in his right arm and took Ibuprofen.[15]  The pain became unbearable when his arm began to swell "around noon."[16]

Castro did not report his arm injury to anyone until around 5:00 p.m., when he told Officer Thelesma.[17]  At approximately 9:45 p.m. that evening, he was examined by a nurse, Kristin Hui.[18]  When Hui asked him why he had not reported his injury sooner, Castro told her that the pain had been tolerable at first, but it had increased when his arm began to swell.[19]  Hui called St. Luke's Hospital to report Castro's injury.[20]

---

[7] *Id.* ¶¶ 27–28.
[8] *Id.* ¶ 29.
[9] *See id.* ¶ 31.
[10] *Id.* ¶ 30.
[11] *Id.* ¶¶ 31, 33.
[12] *Id.* ¶ 31.
[13] *Id.* ¶¶ 32–33.
[14] *Id.* ¶ 35.
[15] *Id.* ¶¶ 41–43.
[16] *Id.* ¶ 44.
[17] *Id.* ¶ 45.
[18] *Id.* ¶¶ 47–48.
[19] *Id.* ¶¶ 49–50.
[20] *Id.* ¶¶ 51–52.

Castro was transported to the emergency room at St. Luke's Hospital at around 2:30 a.m., on April 29, 2017.[21] There he was seen by Patricia Kieba, an emergency room nurse, and Dr. Daniel Heckman. Castro was given a morphine injection and Oxycodone for his swelling and pain.[22] After x-rays revealed a broken right humerus, Castro underwent emergency surgery.[23] Twelve screws and a metal plate were placed in his arm.[24] He was prescribed Oxycodone by Dr. Kenneth Woczewski to manage his pain.[25]

According to Castro, the surgeon pinched a rotator nerve during the surgery, resulting in the loss of mobility and feeling in his right hand.[26] The surgeon recommended "high intense physical therapy."[27] He opined that it would take eighteen months for his hand to heal, but that his arm would never regain full functionality.[28]

On May 1, 2017, after Castro was discharged from the hospital, he was returned to Northampton County prison. At that point, he was assigned bottom bunk status. The Oxycodone prescribed at the hospital was "taken away/discontinued, and replaced" with Tylenol and Ibuprofen.[29] He voluntarily discontinued his Seroquel medication "due to [his] injury and bad side effects."[30]

---

[21] *Id.* ¶¶ 53–54.
[22] *Id.* ¶¶ 57, 58, 62.
[23] *Id.* ¶¶ 60–63, 68.
[24] *Id.*
[25] *Id.* ¶¶ 66–67.
[26] *Id.* ¶ 77.
[27] *Id.* ¶ 78.
[28] *Id.* ¶¶ 79–80.
[29] *Id.* ¶¶ 69–72.
[30] *Id.* ¶ 73.

On May 11, 2017, Castro asked to submit a grievance form, but prison staff told him he must first submit a request to obtain the form.[31] He submitted the request "explaining [his] current situation," but received no response.[32]

From May 11 to May 24, 2017, Castro had four physical therapy sessions.[33] In the meantime, on May 19, 2017, his cast was removed and he was given a sling and a hand brace.[34]

On May 24, 2017, when he arrived at SCI Graterford to serve his sentence, his arm sling was confiscated and his prescriptions were discontinued.[35] He was told that medical staff would have to approve the sling and any medications. Seeking medication for his arm and to continue his physical therapy, he went to sick call. The doctor gave him a prescription for a 30-day supply of Ibuprofen.[36] About two and a half months later, Castro spoke with the psychologist about his depression. He was prescribed Wellbutrin.[37] For his arm pain, he requested something stronger than Ibuprofen. His request was ignored.[38] From May 24 through September 1, 2017, Castro received six additional physical therapy sessions at SCI Graterford.[39]

Although he informed the SCI Graterford medical staff that he had bottom bunk status at Northampton due to his injury and medications, he was not assigned one.[40]

---

[31] Id. ¶ 82.
[32] Id. ¶ 83.
[33] Id. ¶ 86.
[34] Id. ¶¶ 74–76.
[35] Id. ¶¶ 87–89.
[36] Id. ¶¶ 96–98.
[37] Id. ¶¶ 101–03.
[38] Id. ¶¶ 104–06.
[39] Id. ¶ 107.
[40] Id. ¶¶ 90–91.

To get to the top bunk, Castro had to climb onto a desk and jump. As at Northampton, there were no safety bars on the top bunks at SCI Graterford.[41]

In the first week of September 2017, Castro was transferred to SCI Forest.[42] On September 27, 2017, he requested a "weight session" to continue his physical therapy, which medical personnel denied because his activities were restricted due to his arm injury.[43] He has not received any physical therapy or medication since his transfer from SCI Graterford.[44]

## Standard of Review

A complaint is subject to dismissal if the plaintiff fails to plead factual content from which the court can reasonably infer that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v.*

---

[41] *Id.* ¶ 95.
[42] *Id.* ¶ 108.
[43] *Id.* ¶ 109.
[44] *Id.* ¶¶ 109–11.

*Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in the plaintiff's complaint and draw all possible inferences from these facts in his favor.

## Analysis

Castro sues the prison personnel in both their official and individual capacities. A government official, acting in his official capacity, is not a "person" subject to suit under 42 U.S.C. section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, all claims for compensatory relief against the defendants in their official capacities must be dismissed.

In a section 1983 action with multiple defendants, the plaintiff must show that each defendant had personal involvement in the wrongdoing. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). *Respondeat superior* does not give rise to section 1983 liability. Allegations based on the defendant's "responsibility for supervising" those involved, without more, are insufficient. *Rode,* 845 F.2d at 1208. Rather, liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct. *Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845 F.2d at 1207). Allegations of personal involvement must be pled with particularity, providing information on time, place, and persons responsible. *Rode*, 845 F.2d at 1207–08 (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).

Castro does not allege any personal wrongdoing on the part of Kostura, Wetzel, Link, Korszniak, and Overmyer. Thus, the claims against the DOC defendants must be dismissed.

The only non-medical defendant he alleges was personally involved is Corrections Officer Thelesma. Castro initially complained about his arm pain to him. According to Castro, Thelesma reported his injury, which resulted in a nurse responding and providing him medical care. Consequently, Castro actually alleges that Thelesma did respond to his complaints by referring him to a medical provider. He alleges nothing that could be construed as Thelesma having been deliberately indifferent to his medical condition. Hence, the claims against Thelesma will be dismissed.

### Eighth Amendment Claims

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Castro must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). *See also Atkinson v. Taylor,* 316 F.3d 257, 272–73 (3d Cir. 2003). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Monmouth Cty.*, 834 F.3d at 347.

Castro had a serious medical need before and after he fell, breaking his arm. Before he fell, Castro suffered anxiety, depression, and mood swings. His condition was serious enough for a physician to prescribe several prescription medications— Klonopin, Wellbutrin, and Seroquel. *See Smith v. Carver*, Civ. A. No. 07-575, 2008 WL 436911, at *4 (E.D. Pa. Feb. 15, 2008) (quoting *Atkinson,* 316 F.3d at 272–73). After he fell, Castro underwent surgery for a broken arm and was prescribed narcotic pain medication and physical therapy. He also alleges that nerves in his hand were damaged. These alleged injuries constitute a serious medical need. *See, e.g., Jallah v. Bucks Cty. Corr. Facility*, Civ. A. No. 16-5513, 2018 WL 2100203, at *4 (E.D. Pa. May 4, 2018) (broken wrist constitutes serious medical need); *Stones v. McDonald,* 7 F. Supp. 3d 422, 434 (D. Del.), *aff'd*, 573 F. App'x 236 (3d Cir. 2014) (nerve damage constitutes serious medical need); *Burgos v. Phila. Prison Sys.*, 760 F. Supp. 2d 502, 508 (E.D. Pa. 2011) (plaintiff "had a serious medical need as his arm was broken").

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill*, 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health

and safety.  It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm.  The official must actually draw that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994).

Medical malpractice does not amount to a constitutional violation.  *Estelle*, 429 U.S. at 105–06; *Monmouth Cty.*, 834 F. 2d at 347.  Likewise, disagreement as to proper medical treatment does not establish an Eighth Amendment violation.  *Spruill*, 372 F.3d at 235.  Because the analysis differs depending on whether the defendant is a medical provider or non-medical personnel, we shall discuss each in turn.

*Medical Personnel*

Prior to his fall, Castro had told medical staff at Northampton that his Seroquel medication made him drowsy and requested bottom bunk status.  Rather than recommending that Castro be assigned a bottom bunk, the medical staff reduced his Seroquel dosage.  Castro may disagree that reducing his medication was a more appropriate alternative to recommending bottom bunk status. Disagreements over alternative treatments do not rise to the level of deliberate indifference.  *See Spruill*, 372 F.3d at 235.  Thus, Castro fails to state an Eighth Amendment claim relating to his bunk status.

Nor does Castro state a claim for deliberate indifference against the PrimeCare defendants who treated him before he was transferred to the hospital.  When his blood pressure dropped, Nurse Kristin Hui immediately arranged for his transport to St. Luke's Hospital for treatment.  Castro does not allege any act or omission of medical care that

could rise to the level of deliberate indifference on the part of the PrimeCare defendants who saw him before he went to the hospital.

After the surgery to repair his broken arm, he was prescribed Oxycodone by the surgeon at St. Luke's Hospital. He alleges that the PrimeCare defendants at Northampton replaced the narcotic with Tylenol and Ibuprofen. Similarly, at SCI Graterford, his request for a narcotic instead of Ibuprofen was denied.[45] Though he alleges that he should have been treated with narcotics to manage his pain, these allegations "amount to 'mere disagreement as to the proper medical treatment' and [are] insufficient to state a plausible constitutional violation." *Allah v. Thomas*, 679 F. App'x 216, 219 (3d Cir. 2017) (quoting *Spruill*, 372 F.3d at 235, and citing *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.")) (quotation marks omitted). The medical staff did not withhold pain medication. They merely exercised their medical judgment in providing Castro with a different medication than what he wanted. This does not state a claim for deliberate indifference.

Castro alleges that SCI Graterford medical personnel were deliberately indifferent to his medical need for bottom bunk status, which he had had at Northampton after he returned from the hospital.[46] Upon arrival at SCI Graterford, Castro informed medical staff that he had bottom bunk status at Northampton due to his

---

[45] However, when Castro complained of depression, SCI Graterford medical personnel did prescribe Wellbutrin. Compl. ¶ 103.
[46] *Id.* ¶ 71.

injury and medication.[47]  However, to avoid conflict with his cellmates, SCI Graterford medical staff declined his request for bottom bunk status.[48]  Castro claims that to access his top bunk, he had to jump from his desk, placing him in further danger.[49]  He complains there were no safety bars on the bunk beds to prevent him from falling.[50]

Castro does not allege that he was injured or suffered as a result of the denial of bottom bunk status.  At most, he claims inconvenience in getting in and out of his bunk. No one was deliberately indifferent to a serious medical need.

 As Castro alleges, the medical staff at SCI Graterford were otherwise attentive to his medical needs.  Between May 24 and September 1, 2017, medical staff treated him on at least four occasions, prescribed medication, and provided six physical therapy sessions.[51]  Thus, even if the decision to deny him bottom bunk status exposed him to a greater risk of injury, the mistake does not rise to the level of deliberate indifference.

At most, it may be negligence.  *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170–71 (3d Cir. 2015) (finding medical staff were at most negligent in denying a plaintiff bottom bunk where they were otherwise "attentive," and "saw [the plaintiff] regularly, prescribed him a cast and crutches, and advised him not to participate in certain physical activities during his recovery").  Mere negligence is not enough to state an Eighth Amendment claim.  *Id.* at 170 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)).

---

[47] *Id.* ¶¶ 90, 94 ("I brought the bottom bunk status situation to everybody's attention [and] nothing was done.").
[48] *Id.* ¶ 91.
[49] *Id.* ¶ 95.
[50] *Id.*
[51] *Id.* ¶¶ 89, 97, 101, 107.

Castro alleges that his requests to continue physical therapy at SCI Forest were ignored. Denial of recommended postoperative treatment may constitute deliberate indifference under the Eighth Amendment. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978).

Castro's surgeon recommended "high intense physical therapy" and told him that it would take eighteen months for his hand to heal.[52] Had he received no physical therapy whatsoever, he may have stated a claim for deliberate indifference. *See Davis v. Carroll*, Civ. A. No. 03-131-LPS, 2012 WL 2880542, at *3 (D. Del. July 13, 2012) (citing *Durmer v. O'Carroll,* 991 F.2d 64, 69 n.13 (3d Cir. 1993)) ("If proven, the denial of access to medically-ordered physical therapy could be found to constitute deliberate indifference to Plaintiff's medical needs."). However, that is not the case here.

Castro received ten physical therapy sessions—four while at Northampton and six while at SCI Graterford. He had none at SCI Forest.[53] His request for a "weight session" at SCI Forest was denied, due to an activities restriction because of his arm injury. Castro himself explains that the denial of his request for a weight session was a medical decision, amounting to a disagreement about appropriate treatment. Disagreements over the course or the duration of treatment are insufficient to establish deliberate indifference. *Miller v. Steele-Smith*, 713 F. App'x 74, 82 (3d Cir. 2017) (citing *Lanzaro*, 834 F.2d at 346) (failure to establish deliberate indifference to plaintiff's wrist fracture).

---

[52] *Id.* ¶¶ 78–79.
[53] Castro's complaint contains contradictory statements regarding his physical therapy. On one hand, Castro alleges that he received four sessions at Northampton between May 11, 2017 and May 24, 2017, and six sessions at SCI Graterford between May 24, 2017 and September 1, 2017. *Id.* ¶¶ 86, 107. On the other hand, he claims that the defendants "neglected to provide any therapy or honor St. Luke's Prescribed medication." *Id.* ¶ 120(a).

*Non-Medical Personnel*

Non-medical prison officials are afforded wide latitude in deferring a prisoner's care to medical personnel. *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). If a prisoner alleges specific treatment was withheld, non-medical prison personnel can be liable for deliberate indifference only if they knew or should have known that medical personnel were mistreating or failing to treat the prisoner. *Spruill*, 372 F.3d at 236; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Non-physician prison officials are not deliberately indifferent for failing to respond to medical complaints of a prisoner already under treatment by the prison's medical experts. *Id.*

Castro alleges that Officer Thelesma delayed his treatment at Northampton by failing to inform the prison's medical staff of his complaint before leaving the cell block. Castro alleges that he told Officer Thelesma about his arm injury around 5:00 p.m. on April 28, 2017.[54] Officer Thelesma indicated that he would pass the message along because "he had to leave the block."[55] Within five hours, a nurse responded and came to see Castro in his cell.[56]

A five-hour delay in medical treatment does not rise to the level of deliberate indifference. *See Wilson v. Jin*, 698 F. App'x 667, 670–72 (3d Cir. 2017) (no deliberate indifference where prisoner with broken arm was not treated or casted for several days); *cf. Smith v. O'Boyle*, 251 F. App'x 87, 89–90 (3d Cir. 2007) (concluding that the two-hour delay before prisoner received treatment did not constitute deliberate indifference

---

[54] *Id.* ¶ 45.
[55] *Id.* ¶ 46.
[56] *Id.* ¶ 47.

even where the prisoner was in severe pain).  Thus, because he received appropriate medical treatment hours after complaining to Officer Thelesma, Castro fails to state a claim for deliberate indifference against him.  *See Freeman v. Miller*, 615 F. App'x 72, 78 (3d Cir. 2015) (citing *Spruill,* 372 F.3d at 236).

The non-medical personnel at SCI Graterford were not deliberately indifferent to Castro's need for bottom bunk status.  *Matthews*, 613 F. App'x at 170 ("Although corrections officers were aware of [the plaintiff's] difficulty descending from his top bunk, . . . they were also justified in trusting that the medical professionals who regularly treated [him] would recommend a bunk or cell reassignment if he needed one.").  Castro does not allege that he was unable to get to his bunk or suffered any injury in attempting to get to it.  At most, he claims inconvenience or some difficulty in getting into his bunk.  Requiring him to use the top bunk does not amount to a constitutional violation.

Similarly, the non-medical defendants were not deliberately indifferent for failing to install safety bars on the bunk beds.  *See Walker v. Walsh*, Civ. A. No. 3:11-CV-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) (citation omitted) ("[f]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury"); *see also Daugherty v. Hense*, 2009 WL 3817506, at *2 (E.D. Cal. Nov. 13, 2009) ("a lack of a guard rail or safety bar to prevent Plaintiff from rolling and falling out of his bed is not grave enough to form the basis of a viable Eighth Amendment claim").[57]  In any event, he did not suffer any injury while at SCI Graterford or SCI Forest forming a basis for an Eighth Amendment violation.

---

[57] In addition to these allegations, Castro also claims that SCI Graterford charged him $5.00 for his medication and informed him that he would be charged an additional $5.00 for sick calls and refills.

Castro does not allege that non-medical personnel knew or had reason to believe that medical staff were mistreating or not treating him. Instead, as Castro himself alleges, he was receiving medical treatment for his ailments. He was hospitalized, underwent surgery, had follow-up visits with his surgeon, and was prescribed pain medications and therapy. Consequently, the non-medical personnel were justified in relying on the medical experts. *See Matthews*, 613 F. App'x at 170–71.[58] Therefore, Castro has not alleged an Eighth Amendment cause of action against Kastora, Thelesma, Link, Korszniak, Wetzel and Overmyer.

**First Amendment Claim**

In the introduction to his complaint, Castro claims the defendants deprived him of his First Amendment right. Yet, he does not make any factual allegations to explain how his First Amendment right was violated. Giving Castro the benefit as a *pro se* litigant, we construe his retaliation claim as one arising out of the exercise of his right under the First Amendment to complain about his medical treatment.

To state a retaliation claim, Castro must allege facts showing: (1) the conduct that instigated the retaliatory action was constitutionally protected; (2) he suffered an adverse action as a result of the prison official's retaliatory acts; and (3) there was a causal link between the exercise of his constitutional right and the adverse action, that

---

These charges do not give rise to an Eighth Amendment claim. *See Walker*, 2012 WL 314883, at *7 (citing 37 Pa. Code § 93.12(e) (providing the fee for certain prison medical services is $5.00); *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 168 (3d Cir. 2011) (acknowledging the right of the Department of Corrections to charge for medical treatment)).

[58] Construing his complaint liberally, as we must, Castro also claims that his grievance put the non-medical defendants on notice of his inadequate medical treatment, namely declining to provide him with stronger pain medication, rejecting his request for bottom bunk status, and failing to continue his physical therapy. However, this claim also fails. Reviewing a prisoner's grievance relating to medical care alone is insufficient to impute knowledge to a prison official. *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007). The Eighth Amendment requires no more of the grievance examiner than he "review the prisoner's complaints and verify with the medical officials that the prisoner was receiving treatment." *Id.* (internal citations and quotations omitted).

is, his constitutionally protected conduct was a substantial or motivating factor in the state actor's decision to take the adverse action. *Rauser v. Horn*, 241 F. 3d 330, 333 (3d Cir. 2001).

Castro has alleged that he exercised his First Amendment right when he filed his grievance while at Northampton. Filing a prison grievance is protected activity. *Anderson v. Davila*, 125 F.3d 148 (3d Cir. 2001). Castro also contends that his grievance precipitated the retaliatory action.

Viewing the allegations in the light most favorable to Castro, the Northampton medical staff replaced his Oxycodone medication with Ibuprofen after he filed a grievance.[59] Before he filed his grievance, he had been granted bottom bunk status and his Wellbutrin had been increased due to his depression. Given these allegations, Castro fails to state a First Amendment claim.

### Fourteenth Amendment

Castro also contends the defendants Wetzel, Link, Korszniak, and Overmyer violated his Fifth and Fourteenth Amendment rights to procedural due process when they failed to respond to his grievance.[60] He bases his due process claim on their alleged failure to comply with state grievance procedures. Because Castro does not have a liberty interest that would support a procedural due process claim, his Fourteenth Amendment claim against them must be dismissed.

---

[59] *Id.* ¶¶ 72, 81–83. Castro alleges that he filed his grievance the day after seeing the doctor on May 10, 2017. He also alleges the medical staff replaced his narcotic medication with Ibuprofen at some point after his arm was casted on May 1, 2017. However, he does not specifically allege whether the replacement occurred before or after he filed his grievance.

[60] As with his retaliation claim, he alleges these violations in the introduction of his complaint without providing any substantive allegations. Castro also made a general allegation that the defendants violated the Fifth Amendment. The only provision of the Fifth Amendment potentially implicated by the complaint is the due process clause. As that provision concerns only federal action and Castro's lawsuit concerned only action by state defendants, the Fifth Amendment is not applicable.

A prisoner is not constitutionally entitled to a grievance procedure. The state's "creation of such a procedure does not create a liberty interest under the Fourteenth Amendment." *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004) (citations omitted). Therefore, a prisoner's due process rights are not violated when prison officials fail to respond to grievances. *Booth*, 346 F. Supp. 2d at 761. *See also Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (stating that "a state statute or regulation conferring a right is not alone enough to trigger due process.").

### *Monell* Liability

Castro alleges that Kostura was responsible for and failed to address the safety problems at Northampton. In other words, Castro seeks to hold Kostura liable in his official capacity. He contends that Kostura was "responsible for the total running of the institution" and "for all the inmates under his charge in care."[61] Construing his complaint most liberally, Castro is attempting to assert a *Monell* claim against Northampton County Prison.

Under section 1983, a municipality may be held liable for constitutional violations caused by its employees if the violations were the result of a government policy or custom. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1798)); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010). A governmental policy or custom can be established by showing either that the decisionmaker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007).

---

[61] Compl. ¶ 112.

The *Monell* claim against Northampton must be dismissed. Castro makes conclusory allegations that Northampton has "not honored safety regulations" and has failed to address "safety problems," specifically related to the lack of safety bars on top bunk beds.[62]

Even reading the complaint liberally, Castro fails to allege a constitutional violation by any employees or agents of Northampton prison. As noted earlier, the failure to install safety bars on bunk beds does not give rise to an Eighth Amendment violation. Nor does Castro allege any other unlawful customs or policies maintained at Northampton. Without more than his conclusory concerns regarding a failure to honor unspecified safety regulations, his *Monell* claim must be dismissed.

With respect to Wetzel, Link, and Overmyer, Castro alleges they are "in charge and responsible for the total running of the institution, its policies, rules and regulations."[63] Construing this allegation liberally, he claims under *Monell* that these defendants oversaw the decision not to continue his physical therapy. However, he fails to state any facts from which we can infer there was a policy or custom in place to prevent inmates at SCI Forest from receiving physical therapy services. Nor does he state any constitutional violation.

### Private Actors

Castro alleges that at St. Luke's Hospital where he underwent surgery to repair his broken arm, Nurse Kieba saw him in the emergency room and Dr. Heckman was his admitting physician. The claims against Heckman and Kieba must be dismissed because they are private actors.

---

[62] *Id.* ¶¶ 117 (c), 121 (c).
[63] *Id.* ¶¶ 113–15.

To state a section 1983 claim, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person acting under the color of state law. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Only a person acting under color of state law may be liable for a constitutional deprivation under section 1983. Dr. Heckman and Nurse Kieba are private actors. They are not subject to section 1983 liability.

## Professional Negligence

At most, Castro seeks to hold Heckman and Kieba liable for medical malpractice. On one hand, he alleges the surgery was successful. On the other hand, he alleges the surgery resulted in permanent nerve damage to his hand. Beyond this contradiction, he fails to assert any specific allegations relating to the acts or omissions of Heckman and Kieba.[64]

Castro also seeks to hold the medical provider defendants liable for professional negligence under Pennsylvania law. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a related state court claim if it has dismissed all claims over which it has original jurisdiction. If all federal claims are dismissed before trial, "the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citation omitted). No extraordinary

---

[64] Even if Nurse Kieba and Dr. Heckman were state actors, Castro makes no factual allegations showing what role Dr. Heckman and Nurse Kieba played in the deprivation of his constitutional rights. Without any personal involvement in an alleged wrong, the claims against Heckman and Kieba must be dismissed.

circumstances exist here. Accordingly, we decline to exercise supplemental jurisdiction over Castro's medical malpractice claims, which he is free to pursue in state court.

### Other Federal Claims

Castro also alleges claims under "28 U.S.C. Section 1981, 1983, and 1986," which we read to mean claims under 42 U.S.C. sections 1981, 1983, and 1986.[65] There is nothing in the complaint or in the record from which we can draw an inference of conspiracy to deprive Castro of his constitutional rights on account of his race or some other class-based motive. For this reason, we shall dismiss the claims brought under section 1986 (and section 1985, though such a claim is not explicitly stated). *Finch v. Buechel*, 188 F. App'x 139, 141 (3d Cir. 2006) (citing *Griffin v. Breckenridge,* 403 U.S. 88 (1971) (§ 1985(3)); *Davis v. Twp. of Hillside,* 190 F.3d 167, 171 (3d Cir. 1999) (§ 1985(2)); *Clark v. Clabaugh,* 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) (§ 1986)).

### Conclusion

Castro fails to state a claim under section 1983 for deliberate indifference under the Eighth Amendment, lack of due process under the Fourteenth Amendment, or retaliation under the First Amendment. Accordingly, we shall grant the motions to dismiss.

/s/TIMOTHY J. SAVAGE

---

[65] Compl. ¶ 2.